Beth L. Kaufman
SCHOEMAN UPDIKE & KAUFMAN LLP
551 Fifth Avenue
New York, New York 10176
(212) 661-5030
*Attorneys for Defendants New York City Transit Authority*
*(s/h/a "MTA New York City Transit"),*
*Donald Houston, Phakeshia Murphy, and*
*Alfredo Caminero (s/h/a "Alfred Caminero")*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GENEVA AIKEN,

                        Plaintiff,                       Case No.: 1:18-CV-11756-GBD-DF

      -against-

MTA NEW YORK CITY TRANSIT, DONALD
HOUSTON, *In His Individual and Official*
*Capacities*, PHAKESHIA MURPHY, *In Her*
*Individual and Official Capacities*, and
ALFRED CAMINERO, *In His Individual and*
*Official Capacities*,

                        Defendants.
----------------------------------------------------------------X

        Defendants New York City Transit Authority (s/h/a "MTA New York

City Transit"), Donald Houston, Phakeshia Murphy, and Alfredo Caminero (s/h/a

"Alfred Caminero), respectfully request that the Court instruct the jury on the

law as set forth in the attached instructions.  Defendants reserve the right to

seek leave to submit other or further instructions to the jury for the Court's

consideration as may be appropriate.  By submitting these requests,

Defendants do not concede that any charge herein is appropriate until after

hearing plaintiff's evidence in support of her claims.  Defendants reserve their right to withdraw any charge based on the evidence adduced at trial. Defendants further reserve the right to modify this submission as necessary to account for pretrial and evidentiary rulings or to conform to the evidence presented at trial.

Dated: May 11, 2023

Respectfully submitted,

SCHOEMAN UPDIKE & KAUFMAN LLP

By: _____

Beth L. Kaufman
551 Fifth Avenue, 12th Floor
New York, New Yok 10176
(212) 661-5030
bkaufman@schoeman.com

*Attorneys for Defendants New York City Transit Authority (s/h/a "MTA New York City Transit"), Donald Houston, Phakeshia Murphy, and Alfredo Caminero (s/h/a "Alfred Caminero")*

**I.**     <u>**GENERAL INSTRUCTIONS (to be provided by Judge Daniels)**</u>

**Request No. 1 (Burden of Proof and Preponderance of the Evidence)**

  Ms. Aiken has the burden of proof, which means she must prove every element of her claims by a preponderance of the evidence.  The Defendants have no burden of proof on Ms. Aiken's claims.  Thus, if Ms. Aiken's proof fails to establish any essential element of her claim by a preponderance of the evidence, you must find for the Defendants.  To establish a fact by a preponderance of the evidence means to prove that a fact is more probably true than not true.  In other words, a preponderance of the evidence means the greater weight of the evidence taking into consideration the quality and persuasiveness of the evidence.  In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, all exhibits received in evidence, and all stipulated facts.

  After considering all of the evidence, if you find that the credible evidence in support of Ms. Aiken's claims is outweighed by the credible evidence against her claims, or that the credible evidence as to a fact is evenly divided between Ms. Aiken and the Defendants, then you should deliberate no further and you must decide in favor of the Defendants.  That is because Ms. Aiken must prove more than simple equality of evidence; she must prove each element of each claim by a preponderance of the evidence.

  On the other hand, if you are satisfied that Ms. Aiken has carried her burden to prove each element of each claim, then you should consider whether the Defendants has proven an affirmative defense.  With respect to an

affirmative defense, the burden is upon the Defendants to establish the affirmative defense by a preponderance of the evidence.  If you determine that the Defendants have sustained their burden of establishing the affirmative defense, then you should proceed no further and your verdict must be for the Defendants.

If you find that Ms. Aiken has carried her burden to prove each element of either her claim under federal law or under the New York State or City Human Rights Law, and you find that the Defendants have failed to satisfy its burden of establishing an affirmative defense to that claim, only then you may proceed to determine the issue of damages.

Authority:   O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, §§171.60, 171.61 (5th ed. 2001) (modified); 9th Cir. Instr, 1997 § 1.12.1; O'Malley, et al., 3. Fed. Jury Prac. & Instr. § 104.01 (6th ed.); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) (burden of proof remains with plaintiff at all times in employment discrimination action); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); Modern Federal Jury Instructions (LEXIS), Chapter 73, Instructions 73-1, 73-2; jury charge in *Vangas v. Montefiore Medical Ctr.*, Case No. 1:11-cv-06722-ER (S.D.N.Y. 2014) (ECF Doc. No. 122).

## II.   <u>APPLICABLE LAW</u>

### Request No. 2 (Discrimination under Federal and State Law Based on Demotion)

Ms. Aiken alleges that the Transit Authority and/or Mr. Caminero discriminated against her based on her religion by demoting her from probationary SLD to Bus Operator following her requests to have Sundays off of work for religious observance.  Under federal law, Title VII, only the Transit Authority may be found liable for this claim.  Under state law, the New York State Human Rights Law ("NYSHRL"), both the Transit Authority and Mr. Caminero, individually, may be found liable.

The federal and state law claims are analyzed under the same standard.  Under these statutes, a plaintiff makes out a *prima facie* case of discrimination by showing that: ( 1) she belongs to a protected class; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and ( 4) the action occurred under circumstances giving rise to an inference of discrimination.With regard to the first prong, it is not disputed that Ms. Aiken belongs to a protected class. With regard to the third prong, the only adverse action you may consider is Plaintiff's demotion.   If a plaintiff successfully presents a prima facie case, that is only the first step.  Your analysis will continue.  The burden then shifts to the Transit Authority and Mr. Caminero to proffer one or more legitimate, nondiscriminatory reasons for the adverse employment action. In this case, the only adverse action you may consider is Plaintiff's demotion.  If you decide that the Transit Authority and Mr. Caminero did that, then the plaintiff

4

must then demonstrate that the proffered reason or reasons are a pretext for discrimination.

To prevail on a claim for discrimination under federal or state law in this context, Ms. Aiken must prove by a preponderance of the evidence that the Transit Authority or Mr. Caminero intentionally discriminated against her and that Ms. Aiken's requests to have Sundays off of work for religious observance religion was a motivating factor in the Transit Authority or Mr. Caminero's decision to demote her. A "motivating factor" is a factor that played some significant part in the Transit Authority or Mr. Caminero's employment decision, even if the Transit Authority or Mr. Caminero also had other, lawful motives that caused the decision.

The Transit Authority and Mr. Caminero assert that Ms. Aiken was demoted entirely for nondiscriminatory reasons. You must remember that an employer may demote an employee for any reason, good or bad, as long as it is not discriminatory. Similarly, an employer is entitled to set its own expectations and requirements as to what constitutes satisfactory performance. You are not to judge the wisdom of the Transit Authority or Mr. Caminero's reasons for demoting Ms. Aiken or the adequacy of the Transit Authority or Mr. Caminero's standards of expected performance. Your sole goal is to determine whether the Transit Authority or Mr. Caminero's decision to demote Ms. Aiken was motivated in part by her religion.

If you believe the Transit Authority and Mr. Caminero's reasons for demoting Ms. Aiken were based on her unsatisfactory performance, then you must find for the

Transit Authority and for Mr. Caminero individually.  On the other hand, if you find that the reasons offered by The Transit Authority and Mr. Caminero were "pretextual," that is, they were not the real reasons for demoting Ms. Aiken, then you may infer or not infer, as you choose, that the pretext was designed to conceal discrimination.  Remember, it is Ms. Aiken's burden to prove that the decision to demote her was based, at least in part, on intentional discrimination.

In addition, the NYSHRL permits individual liability only if the person has "an ownership interest or the power to do more than carry out personnel decisions made by others" at the company where the discrimination occurred.  Thus, if you find that Ms. Aiken has failed to prove that Mr. Caminero had either (1) an ownership interest; or (2) the power to do more than carry out personnel decisions made by others at the Authority, you must find in favor of Mr. Caminero as to individual lability.

If you find the Transit Authority liable but not Mr. Caminero individually, you may consider whether Mr. Caminero may be found liable of a violation of state law under an aiding and abetting theory.  Aiding and abetting is only a viable theory where an underlying violation has taken place by another party.  Unless you find that the Transit Authority is liable and Mr. Caminero is not individually liable, you should not consider the possibility of aiding and abetting liability.   To find Mr. Caminero liable for aiding and abetting under state law, Ms. Aiken must prove by a preponderance of the evidence that Mr. Caminero actually participated in the discriminatory conduct such that he shared the intent or purpose of the Transit

Authority.  It is not enough to merely participate in discriminatory conduct without such intent or purpose.

Authority:   Jury charge in *Saber v. New York State Dep't of Financial Servs.*, Case No. 1:15-cv-05944-LGS (S.D.N.Y. 2015) (ECF Doc. NO. 142-14); *United States v. City of New York*, 717 F.3d 72, 102 (2d Cir. 2013); *In re N.Y.C. Dep't of Educ.*, 2019 U.S. Dist. LEXIS 54430, at *36-37 (S.D.N.Y. Mar. 29, 2019); *Espinoza v. New York City Dep't of Transportation,* 304 F. Supp. 3d 374, 387 (S.D.N.Y. 2018); *Pouncy v. Advanced Focus LLC*, No. 15-CV-6260 (JMF), 2017 U.S. Dist. LEXIS 156414, 2017 WL 4280949, at *4 n.1 (S.D.N.Y. Sept. 25, 2017); *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 836 (S.D.N.Y. 2013); *Giannone v. Deutsche Bank Sec., Inc.*, 392 F. Supp. 2d 576, 586 (S.D.N.Y. 2005); *Moore v. Metro. Transp. Auth.* 999 F. Supp. 2d 482, 510 (S.D.N.Y. 2013); *Fellah v. City Univ. of N.Y.*, 2022 U.S. Dist. LEXIS 179318, at *21 (S.D.N.Y. Sep. 30, 2022);

**Request No. 3 (Discrimination under the New York City Human Rights Law ("NYCHRL") based on demotion)**

Ms. Aiken also has brought a religious discrimination claim under the New York City Human Rights Law ("NYCHRL") against the Transit Authority and Mr. Caminero based on her demotion. Like Title VII and the NYSHRL, the NYCHRL makes it an unlawful discriminatory practice for an employer to discriminate against an employee because of religion.

Under the NYCHRL, Ms. Aiken needs to demonstrate by a preponderance of the evidence that she was "treated less well" or "treated differently" than other employees because of her religion in a way that is more than trivial, insubstantial, or petty. Thus, Ms. Aiken must show that by NYCHRL being demoted, she was treated less well than other employees because of her religion.

Even you find that Ms. Aiken was treated less well than other employees who were of a different religion, it is not enough that you find Ms. Aiken simply was not treated fairly by being demoted. The NYCHRL is not a general civility code. You must find that Ms. Aiken has proven by a preponderance of the evidence that her religion was a motivating factor in the reason the Transit Authority and/or Mr. Caminero demoted her.

Authority: *Afarseille v. Afount Sinai Health Sys., Inc.*, No. 18cv12136 (VEC), 2021 WL 3475620, at *5 (S.D.N.Y. Aug. 5, 2021); *Rossbach v. Montefiore Med. Ctr.,* No. 19cv5758 (DLC), 2021 WL 930710, at *6 (S.D.N.Y. Mar. 11, 2021); *Santiago v. Bernard F. Dowd, Inc.*, 2017 NY Slip Op 30791(U), ¶ 8 (Sup. Ct.).

**Request No. 4 (Retaliation Under the NYCHRL)**

Ms. Aiken has also brought a claim for retaliation under the NYCHRL against the Transit Authority and Mr. Caminero based on her demotion and against all Defendants based on alleged coercive and/or threatening comments made. A *prima facie* claim for retaliation under the NYCHRL requires that the plaintiff show that "something happened that would be reasonably likely to deter a person from engaging in protected activity."

It is important to remember that Ms. Aiken  bears the ultimate burden of establishing that (1) she engaged in a protected activity, in this case that she requested a religious accommodation, (2) that the Defendants were aware that she participated in such activity, (3) the Defendants engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct by the Defendants. Ms. Aiken must show that retaliation played a part in the Defendants' conduct.

With respect to the claim of retaliatory demotion against the Transit Authority and Mr. Caminero, if you believe Ms. Aiken met this initial burden, you must then consider whether the Transit Authority and Mr. Caminero presented legitimate, independent, and nonretaliatory reasons to support the decision to demote Ms. Aiken. Then, if you decide that the Transit Authority and Mr. Caminero met their burden, you must consider whether Ms. Aiken has shown that the reasons put forth were

merely a pretext for retaliation.  If Ms. Aiken has failed to meet this burden, you must find for the Transit Authority and Mr. Caminero with respect to the demotion.

With regard to alleged comments made, you must decide whether the comments were in fact made, whether those who made comments were aware of Ms. Aiken's alleged protected activity, that the comments made, if any, were reasonably likely to deter a person from engaging in that protected activity, and whether the protected activity was causally related to the alleged comments made.  If Ms. Aiken fails to meet this burden, you must find for the Defendants.

*Authority:* Administrative Code of City of N.Y. § 8–107 [7]; *Benzinger v. Lukoil Pan Americas, LLC,* 447 F. Supp. 3d 99, 129 (S.D.N.Y. 2020); *Williams v. New York City Hous. Auth.,* 61 A.D.3d 62, 70–71, 872 N.Y.S.2d 27).  *Brightman v. Prison Health Serv., Inc.,* 108 A.D.3d 739, 739–40, 970 N.Y.S.2d 789, 791 (2013); *Forrest v. Jewish Guild for the Blind,* 3 N.Y.3d 295, 312–313, 786 N.Y.S.2d 382, 819 N.E.2d 998); *Pace v. Ogden Servs. Corp.,* 257 A.D.2d 101, 104, 692 N.Y.S.2d 220; *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 2d Cir. 2005); *Delrio v. City of New York,* 91 A.D.3d at 901, 938 N.Y.S.2d 149. *Benzinger v. Lukoil Pan Americas, LLC,* 447 F. Supp. 3d 99, 129 (S.D.N.Y. 2020).

**Request No. 5 (Hostile Work Environment and Discrimination Under the NYCHRL Based on Comments)**

Ms. Aiken also has brought a hostile work environment and discriminatory demotion claim against all Defendants under the NYCHRL based on alleged comments made by Mr. Murphy, Ms. Houston, and Mr. Caminero.  Under the NYCHRL, discrimination and hostile work environment claims share the same standard.  A plaintiff needs to demonstrate that she was "treated less well" or "treated differently" than other employees because of her religion "in a way that [is] more than trivial, insubstantial, or petty."

Even you find that Ms. Aiken was treated less well than other employees who were of a different religion based on comments made to her, it is not enough that you find Ms. Aiken simply was not treated fairly.  The NYCHRL is not a general civility code. You must find that Ms. Aiken has proven by a preponderance of the evidence that the reason the Defendants treated Ms. Aiken less well than other employees who were of a different religion was because of Ms. Aiken's religion.

Authority:   New York Pattern Jury Instruction 9:5A.; *Rossbach v. Montefiore Med. Ctr.,* No. 19cv5758 (DLC), 2021 WL 930710, at *6 (S.D.N.Y. Mar. 11, 2021); *Afarseille v. Afount Sinai Health Sys., Inc.,* No. 18cv12136 (VEC), 2021 WL 3475620, at *5 (S.D.N.Y. Aug. 5, 2021); *Konteye v. New York City Dep 't of Educ.,* No. 17CIV2876GBDRWL, 2019 WL 3229068, at *7 (S.D.N.Y. July 18, 2019). *Santiago v. Bernard F. Dowd, Inc.*, 2017 NY Slip Op 30791(U), ¶ 8 (Sup. Ct.).

**Request No. 6 (First Affirmative Defense to Hostile Work Environment under the NYCHRL)**

Even if you find that Ms. Aiken has proven that she was treated differently because of her religion under the NYCHRL based on comments made, you must find in favor of the Defendants if the Defendants prove by a preponderance of the evidence that a reasonable person would have considered the comments to be nothing more than petty slights or trivial inconveniences.

Authority:    New York Pattern Jury Instruction 9:5A.

**Request No. 7 (Second Affirmative Defense to Hostile Work Environment under the NYCHRL)**

Even if you find that Ms. Aiken has proven all six of the elements of a hostile work environment under the NYCHRL, you must find in favor of the Defendants if the Defendants prove by a preponderance of the evidence that the Transit Authority had anti-discrimination policies, procedures, or programs and there were no or relatively few prior incidents of discriminatory conduct by Mr. Houston, Ms. Murphy, and/or Mr. Caminero.

Authority:    New York Pattern Jury Instruction 9.5A; NYC Admin Code § 8-107(13(d).

**Request No. 8 (Damages – General Instruction)**

I am about to instruct you as to the proper measure of damages.  If you conclude that Ms. Aiken has met her burden of proving any of her claims, then you must determine whether or not she is entitled to damages.  You should not infer that Ms. Aiken is entitled to recover damages merely because I am instructing you on how to calculate damages.  You should not even consider the issue of damages unless you first find that Ms. Aiken has met her burden of proving any of her claims, and also that the Defendants have failed to meet its burden of proving an affirmative defense to any such claim.

If you determine that Ms. Aiken is entitled to damages, the damages that you award must be fair and reasonable, neither inadequate nor excessive.  You may award damages only for those injuries which you find Ms. Aiken has proven by a preponderance of the evidence to have been the proximate result of Defendants' actions.  It is Ms. Aiken's burden to prove, by a preponderance of the evidence, the amount of damages and to prove the damages were caused by the Defendants' actions.


Authority:   Modern Federal Jury Instructions (LEXIS), Chapter 77, Instruction 77-1; jury charge in *Vangas v. Montefiore Medical Ctr.*, Case No. 1:11-cv-06722-ER (S.D.N.Y. 2014) (ECF Doc. No. 122).

**Request No. 9 (Damages – Emotional Pain and Suffering)**

The only type of damages that may be available to Ms. Aiken, should she prove her case to you, by a preponderance of the evidence, is money to compensate her for her demotion or for alleged emotional distress resulting from Defendants' comments.  If you find that Ms. Aiken is entitled to damages, these are the only types of damages that you are permitted to award to her.

If you award damages for emotional distress, the amount should be reasonable compensation in light of all of the evidence in the case.  The law does not try to fix, nor does the law permit, a precise formula by which pain and suffering may be measured and reduced to dollars and cents.  Instead, the determination of the amount of damages for emotional distress, if any, is left to your common sense and good judgment.  But any such damages may not be based on speculation; rather, any damages must be based on the evidence presented at trial.

You must also consider whether and to what extent Ms. Aiken's emotional distress has been due to a condition that existed prior to the Defendants' actions or arose from events other than those alleged actions.  Ms. Aiken cannot recover for these.

Authority:   Modern Federal Jury Instructions (LEXIS), Chapter 88-29, Instruction 88A.05; *Thomas v. iStar Financial, Inc.*, 629 F.3d 276, 281 (2d Cir. 2010); *Broadnax v. City of New Haven*, 415 F.3d 265, 270-71 (2d Cir. 2005); *Patrolmen's Benevolent Ass'n of N.Y., Inc. v. City of New York*, 310 F.3d 43, 55 (2d Cir. 2002); *Quinby v. WestLB* AG, 2008 U.S. Dist. LEXIS 62366, *7-8 (S.D.N.Y. Aug. 15, 2008); jury charge in *Vangas v. Montefiore Medical Ctr.*, Case No. 1:11-cv-06722-ER (S.D.N.Y. 2014) (ECF Doc. No. 122).

## III.   EVALUATION OF THE EVIDENCE

### Request No. 10 (Evidence)

You must determine the facts based on the evidence.  Evidence is the sworn testimony of witnesses, stipulations, and exhibits that have been admitted into evidence by the Court.  Exhibits marked for identification but not admitted are not evidence.

Evidence does not include objections, any testimony that has been excluded or stricken, or arguments or statements by lawyers or by me.  Questions asked by lawyers are not evidence.  Arguments made by the lawyers are not evidence.  The openings statements and summations by the lawyers are not evidence, thought they are intended to help you understand the evidence and reach a verdict.  If, however, your recollection of the evidence differs from the statements made by the attorneys, it is your recollection that controls.

Any statements or rulings that I may have made do not constitute evidence.  Because you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to what the facts are or what the verdict should be.  The rulings I have made during the trial are not any indication of my views.  Also, you should not draw any inference from the fact that I occasionally asked certain questions of witnesses.  Those questions were intended only to clarify or expedite and they are not an indication of my view of the evidence.  In short, if anything I have said or done seemed to you to indicate an opinion relating to any matter you need to consider, you must disregard it.

16

Authority:   Modern Federal Jury Instructions (LEXIS), Chapter 74, Instructions
74-1; jury charge in *Vangas v. Montefiore Medical Ctr.*, Case No. 1:11-
cv-06722-ER (S.D.N.Y. 2014) (ECF Doc. No. 122).

**Request No. 11 (Direct and Circumstantial Evidence)**

You may use direct and circumstantial evidence in reaching your verdict.  Direct evidence includes a witness's testimony about something he or she knows by virtue of the witness's own senses—something the witness has seen, felt, touched, or heard.  Direct evidence may also be in the form of an exhibit that was admitted into evidence.

Circumstantial evidence is evidence that tends to prove one fact by proof of other facts.  For example, assume that when you came into the courthouse this morning, the sun was shining and it was a nice day.  Assume the courtroom blinds are drawn and you cannot look outside.  As you are sitting here, someone walks in with an umbrella that is dripping wet.  Someone else walks in with a raincoat that is also dripping wet.  Now you cannot look outside the courtroom and you cannot see whether or not it is raining, so you have no direct evidence of whether it is raining outside.  But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that between the time you arrived at the courthouse and the time these people walked in, it had started to rain.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from an established fact the existence or nonexistence of some other fact.

18

Many facts, such as a person's state of mind, can only rarely be proved by direct evidence.  Circumstantial evidence is of no less value than direct evidence.

Authority:    Modern Federal Jury Instructions (LEXIS), Instruction 3.3; jury charge in *Vangas v. Montefiore Medical Ctr.*, Case No. 1:11-cv-06722-ER (S.D.N.Y. 2014) (ECF Doc. No. 122).

**Request No. 12 (Inferences)**

I have used the term "infer," and the lawyers in their arguments have asked you to draw inferences.  When you draw an inference, you conclude from one or more established facts that another fact exists, and you do so on the basis of your reason, experience, and common sense.  This process is not guesswork, suspicion, or speculation.  An inference is a reasoned, logical conclusion that you may draw, but are not required to draw, from the facts proven by the evidence.  In considering inferences, you should use your common sense and draw from the facts which you find to be proven whatever reasonable inferences you find to be justified in light of your experience.

Authority:   Modern Federal Jury Instructions (LEXIS), Instruction 3.6jury charge in *Vangas v. Montefiore Medical Ctr.*, Case No. 1:11-cv-06722-ER (S.D.N.Y. 2014) (ECF Doc. No. 122).

20

**Request No. 13 (Credibility and Bias of Witnesses)**

You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves.  You should carefully scrutinize all testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief.  Consider each witness's motive, state of mind, and demeanor on the witness stand during this trial.  Consider the witness's ability to observe the matters to which he or she has testified and whether the witness impresses you as having an accurate recollection of those matters.  Consider also the manner in which the witness might be affected by the verdict and the extent to which, if at all, each witness is either supported or contradicted by other evidence.

Inconsistencies or discrepancies in the testimony of a witness or between testimonies of different witnesses may or may not cause you to discredit such testimony.  Two or more persons witnessing an incident or transaction may see, hear or honestly recollect it differently.

A witness may be discredited or "impeached" by contradictory evidence, that is by a showing that he or she testified falsely concerning a matter, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness's present testimony.  If you find that a witness has willfully testified falsely as to any material fact, the law permits you to disregard completely the entire testimony of that witness upon that principle that one who testifies falsely about one material

fact is likely to testify falsely about everything.  You are not required, however, to consider such a witness as totally unbelievable.  You may accept so much of his or her testimony as you deem true and disregard what you feel is false.

If you decide there is a conflict among the testimony of the witnesses, it is your duty to determine which, if any, testimony should be believed.  There is no magic formula by which one may determine how to resolve conflicting testimony.  In your everyday affairs you determine for yourselves the reliability or unreliability of statements made to you by others and which statements you will believe and not believe.  The same tests that you use in your everyday dealings are the tests which you should apply in your deliberations.

Even if a witness's testimony is not contradicted or challenged, you are not required to accept the testimony as true.  Because of the witness's demeanor, the inherent improbability of the testimony, or for other reasons sufficient to yourselves, you may decide that the testimony is not worthy of belief.

The interest or lack of interest of any witness in the outcome of this case—that is, the extent to which he or she stands to gain or lose anything as a result of the decision in this case—should be considered by you in determining what weight, if any, you will assign to that witness's testimony.  For example, Ms. Aiken has testified before you.  The fact that she is Ms. Aiken and therefore has an interest in the outcome of her claims is a matter for you to consider, together with your observation of Ms. Aiken as a witness, in determining her

credibility, the truthfulness of her testimony, and the weight, if any, you will give her testimony.  Similarly, several other individuals have testified.  The testimony of those witnesses should also be evaluated in relation to the interest, if any, they personally may have in the outcome of this case.

Keep in mind, though, it does not automatically follow that testimony from an interested witness is to be disbelieved.  No matter what their interest in a case may be, many people would not testify falsely.  If is for you to decide, based on your own perceptions and common sense, to what extent, if any, the witness's bias or interest has affected his or her testimony.  You are not required to disbelieve an interested witness; you may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

After making your own judgment, you will give the testimony of each witness as much weight, if any, as you may think it deserves.  In short, you may accept or reject the testimony of any witness in whole or in part based on your common sense, good judgment, and life experience.


Authority:    O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr., §105.01 (6th ed.) (modified); jury charge in *Vangas v. Montefiore Medical Ctr.*, Case No. 1:11-cv-06722-ER (S.D.N.Y. 2014) (ECF Doc. No. 122).

**Request No. 14 (Rulings on Evidence and Objections)**

During the trial, I made rulings from time to time as to the admissibility of evidence.  I sustained some objections and overruled others.  In this connection you should also remember that it is the witness's answer to a question that is evidence—not the question itself.  Further, my rulings as to the admissibility of evidence do not indicate any opinion as to the weight or effect of such evidence. You are the sole judges of the weight and effect of the evidence.  If, however, I sustained an objection to any evidence or if I ordered evidence stricken, that evidence must be entirely ignored.

Under our system of justice, it is the function and duty of counsel to object to anything that they think is legally improper, and they would be remiss in their duty if they failed to do so.  It is the Court's function and duty to rule on these questions of law, and the Court also would be remiss in its duty, too, if it failed to make such rulings, even though sometimes they may not have been to the liking of counsel for either side.

It is important that you not draw inferences or show any prejudice against either side because of any objections that counsel may have made during the trial, or any arguments that counsel may have made, or the fact that it may have been necessary from time to time to engage in conferences at the side bar or to exclude you from the courtroom altogether.

Authority:   Mathes, *Jury Instructions and Forms for Federal Rules*, 28 F.R.D. 401 §9.04 (1961).

24

## IV.    <u>DELIBERATIONS</u>

### Request No. 15 (Duty to Deliberate)

You will now deliberate and decide the case.  In order to prevail, Ms. Aiken must sustain her burden of proof as I have explained it to you with respect to each element of the claims.  If you find that Ms. Aiken has failed to sustain the burden on any element of each claim, you should return a verdict against her on that claim.

If you find that Ms. Aiken has succeeded in sustaining her burden of proof as to each element of a claim, then you should consider whether the Defendants have sustained their burden of proof with respect to any applicable affirmative defense.  If so, then you should return a verdict against Ms. Aiken. Only if you find that Ms. Aiken has sustained her burden and that the Defendants have failed to sustain their burden as to an applicable affirmative defense should you return a verdict in favor of Ms. Aiken.

It is your duty as jurors to consult with one another and deliberate with a view to reaching an agreement.  Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors and you should not hesitate to change an opinion when convinced that it is erroneous.  Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

You are not to discuss the case until all jurors are present.  Only when all jurors are present do you constitute a jury and only then may you deliberate.

Authority:   Modern Federal Jury Instructions (LEXIS), Instruction 3.7; jury charge in *Vangas v. Montefiore Medical Ctr.*, Case No. 1:11-cv-06722-ER (S.D.N.Y. 2014) (ECF Doc. No. 122).

**Request No. 16 (Notetaking)**

If  any you took notes during the course of the trial, you should not
show your notes to or discuss your notes with any other juror during your
deliberations.  Any notes you have taken are to be used soley to assist you.  The fact
that a particular juror has taken notes entitles that juror's views to no greater
weight than those of any other juror.

Further, your notes are not to substitute for your recollection of the
evidence in the case.  If you have any doubt as to any testimony, you may request
that the official trial transcript that has been made of these proceedings be read or
otherwise provided to you.

Authority:   Modern Federal Jury Instructions (LEXIS), Instruction 3.7; jury
charge in *Vangas v. Montefiore Medical Ctr.*, Case No. 1:11-cv-06722-
ER (S.D.N.Y. 2014) (ECF Doc. No. 122).

27

**Request No. 17 (The Right to See Exhibits and Hear Testimony; and Communications with the Court)**

The exhibits will be sent to you in the jury room.  If you want any of the testimony read back to you, that can be arranged.  Please appreciate that it is not always easy to locate the testimony that you might want, so be as specific as you possibly can as to what witness and what portion of that witness's testimony you would like to hear.

Any communication with the Court should be made in writing, signed by your foreperson.  I will respond to any questions or requests you have as promptly as possible, either in writing or by having you return to the courtroom so that I can speak with you in person.  In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.  Do not ever indicate, in a note or otherwise, what the vote is or which way the majority is leaning or anything like that.

Authority:   Modern Federal Jury Instructions (LEXIS), Instruction 3.7; jury charge in *Vangas v. Montefiore Medical Ctr.*, Case No. 1:11-cv-06722-ER (S.D.N.Y. 2014) (ECF Doc. No. 122).

**Request No. 18 (Duties of Foreperson and Special Verdict Form)**

Your first task when you retire to deliberate is to select, by your own vote, one of you to sit as your foreperson.  The foreperson does not have any more power or authority than any other juror, and his or her vote or opinion does not count for any more than any other juror's vote or opinion.  The foreperson is merely your spokesperson to the court.  He or she will send out any notes.  When you have reached a unanimous verdict, you should send a note, signed by the foreperson, and the note should only say, "The jury has reached a unanimous verdict."  You should not indicate how you decided the case.  You will then return to open court, where the foreperson will announce the verdict on behalf of the jury.

To help you in your deliberations, all of you will be given a special verdict form.  The special verdict form contains a series of questions about the case that you will be asked to answer based on the evidence and the instructions that I have given you.  You need only fill out one form, which should be completed by the foreperson.  When the foreperson has completed the form, he or she must sign his or her name and the form will be marked as a Court exhibit.

Authority:   Modern Federal Jury Instructions (LEXIS), Chapter 78, Instructions 78-1, 78-5, 78-6; jury charge in *Vangas v. Montefiore Medical Ctr.*, Case No. 1:11-cv-06722-ER (S.D.N.Y. 2014) (ECF Doc. No. 122).

Dated:  May 11, 2023

SCHOEMAN UPDIKE & KAUFMAN LLP


By: _____
        Beth L. Kaufman
551 Fifth Avenue, 12th Floor
New York, New York 10176
Telephone: (212) 661-5030
bkaufman@schoeman.com


*Attorneys for Defendants New York City Transit Authority (s/h/a "MTA New York City Transit"), Donald Houston, Phakeshia Murphy, and Alfredo Caminero (s/h/a "Alfred Caminero")*